**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-1089-KDB-DCK**

| | | |
|---|---|---|
| **BRENDA SMITH** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | **MEMORANDUM AND** |
| | **)** | **RECOMMENDATION** |
| **v.** | **)** | |
| | **)** | |
| **COMMISSIONER OF SOCIAL SECURITY,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Complaint" (Document No. 1). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that the Commissioner's decision be affirmed.

**BACKGROUND**

Plaintiff Brenda Smith ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on an application for disability benefits. (Document No. 1). On or about March 8, 2021, Plaintiff filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act, alleging an inability to work due to a disabling condition beginning on March 1, 2017. (Transcript of the Record of Proceedings ("Tr.") 35, 54, 59, 121, and 177). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on February 8, 2022, and again after reconsideration on April 17, 2023. (Tr. 35, 97, 121). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> Your condition results in some limitations in your ability to perform work related activities. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age and education in determining how your condition affects your ability to work. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in the file, we have determined that you can adjust to other work.

(Tr. 123).

Plaintiff filed a timely written request for a hearing on or about May 30, 2023. (Tr. 35, 123). On January 29, 2024, Plaintiff appeared and testified at a telephone hearing before Administrative Law Judge Vincent Hill (the "ALJ"). (Tr. 35, 54-79). In addition, Cherice Powell, a vocational expert ("VE"), and Thomas Pena, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on April 11, 2024, denying Plaintiff's claim. (Tr. 35-46). On June 18, 2024, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on October 15, 2024. (Tr. 1, 175-176). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on December 17, 2024. (Document No. 1). On January 3, 2025, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's Social Security Brief (Document No. 7) was filed April 30, 2025; and the Commissioner's Social Security Brief (Document No. 8) was filed May 30, 2025. Plaintiff's Reply Brief was filed June 12, 2025.

This matter is ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Kenneth D. Bell is now appropriate.

2

**STANDARD OF REVIEW**

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d

251, 267 (4th Cir. 2017)).  Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome.  Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between March 8, 2017, and the date of the decision.[1] (Tr. 1).  To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled.  20 C.F.R. § 404.1520(a).  The five steps are:

(1)  whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2)  whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3)  whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4)  whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled;  and

(5)  whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 46).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since March 2017, the alleged disability onset date. (Tr. 37). At the second step, the ALJ found that Plaintiff's "obesity, bipolar disorder, major depressive disorder, generalized anxiety disorder, social anxiety disorder, bilateral knee dysfunction, and asthma" were severe impairments.[2] (Tr. 37). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 39).

Next, the ALJ assessed Plaintiff's RFC and found that Plaintiff retained the capacity to perform sedentary work activity, with the following limitations:

> can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs; occasionally kneel, crouch, crawl, balance and stoop; should avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, gases and poorly ventilated areas; and should avoid all exposure to hazardous machinery and unprotected heights. The claimant is capable of performing simple, routine tasks, and maintaining attention, concentration, persistence or pace to stay on task for two-hour periods during a normal eight-hour workday, as required to perform such tasks. The claimant requires a low stress work setting, which is further defined as work that is not production pace or quota based, rather a goal-oriented job primarily dealing with things as opposed to people; no more than occasional interaction with the public, supervisors and coworkers; but no work with the public as a component of the job, such as

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

cashier, sales or negotiations, however, incidental/casual contact is not precluded.

(Tr. 41). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff had no past relevant work. (Tr. 45). At the fifth and final step, the ALJ concluded based on the testimony of the vocational expert ("VE") and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 45). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a ticket counter, a sorter, and a document preparer. (Tr. 45, 70-71). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, between March 2017 and the date of the decision, April 11, 2024. (Tr. 46).

On appeal to this Court, Plaintiff alleges the ALJ's decision includes the following errors: (1) The ALJ's evaluation of Plaintiff's migraines and headaches was not supported by substantial evidence; and (2) The ALJ failed to consider Plaintiff's testimony regarding the combined impact of her impairments on her ability to function in a work environment. (Document No. 7). The undersigned will discuss each of these contentions in turn.

**A. Plaintiff's Migraines and Headaches**

In the first assignment of error, Plaintiff argues that the ALJ erred in determining her migraines and headaches were not a severe impairment in light of substantial evidence to the contrary. (Document No. 7, p. 5). Plaintiff was diagnosed and treated for tension headaches and migraines, experiencing them on a weekly basis and taking prescribed medication to manage her symptoms. Id. (citing Tr. 820, 824). Plaintiff experiences migraines once or twice a month, with

6

symptoms including nausea, light sensitivity, and sound sensitivity.  Id. at p. 6 (citing Tr. 884).

Plaintiff was prescribed Rizatriptan for her headaches, which had a positive impact but did not

prevent Plaintiff from experiencing headaches.  Id. (citing Tr. 820-822).  Plaintiff later experienced

difficulty getting relief from her headaches and migraines, with her migraines increasing in

frequency to once or twice a week.  Id. (citing Tr. 1248-1249, 1288, 1293, 1559).  Plaintiff stated

in her function reports that her headaches blurred her vision, prevented concentration, and incurred

light and sound aversion roughly every other day.  Id. at p. 7 (citing Tr. 249-252, 257).  Plaintiff

also testified she would suffer bad headaches due to high blood pressure, which occurred every

other day and lasted for the full day.  Id. (citing Tr. 66).

Plaintiff contends that her migraine-based limitations would impact her ability to work and

result in excessive off-time.  Id. at p. 7.  Plaintiff notes that the ALJ found her migraines and

headaches, while medically determinable, did not rise to the level of a severe impairment because

prescribed medication reduced her migraines and headaches to only a mild limitation.  Id. (citing

Tr. 38).  Plaintiff asserts that an ALJ can determine an impairment is not severe "if it does not

significantly limit [the claimant's] physical or mental ability to do basic work activities."  Id. at

pp. 7-8;  (see Triplett v. Saul, 860 Fed Appx.  522, 858 (4th Cir. 2021) (quotation omitted)).

Plaintiff argues that the ALJ must consider the combined effect of all the individual's impairments

regardless of severity when determining their residual functional capacity.  Id. at p. 8 (citing 20

C.F.R. § 404.1545(e);  Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019)).  Plaintiff further

contends that the only evidence the ALJ discussed in relation to Plaintiff's migraines was a June

2022 treatment note stating her headache medication was effective.  Id. at p. 8 (citing Tr. 38, 844).

Plaintiff goes on to state that the ALJ's assessment of the treatment note failed to address the fact

that she faced further difficulty, with her medication becoming less effective and running out of

7

her medication before she was due for a refill.  Id.  Plaintiff concludes the ALJ's reliance on the single treatment note does not amount to substantial evidence given that Plaintiff continued to seek treatment for her migraines and headaches during the relevant disability period.  Id. at p. 9.

Plaintiff then argues that the ALJ failed to consider Plaintiff's ongoing headache symptoms at step two, regardless of her use of medication.  Id. at p. 9.  Plaintiff maintains that the migraine and headache symptoms she experienced would have more than a minimal impact on her ability to work and that the ALJ's lack of consideration and analysis of them amounts to harmful error. Id.  Plaintiff also points to the vocational expert's testimony that being off task for more than 10% of the workday or missing more than one day of work per month would prevent an individual from maintaining employment to suggest her migraine and headache symptoms warrant further consideration by the ALJ.  Id. at 10.  Plaintiff contends that remand is necessary for her migraine condition and symptoms to be appropriately considered.  Id.

In response, Defendant asserts that the ALJ's evaluation of Plaintiff's migraine and headache symptoms at step two were supported by substantial evidence.  (Document No. 8, p. 4). Defendant notes that Plaintiff did not identify migraines as a disabling condition when she applied for disability benefits.  Id. (citing Tr. 198).  The ALJ provided an explanation that the evidence available showed that her migraines were under control with medication as of June 2022.  Id. (citing Tr. 38, 844).  Defendant highlights that Plaintiff herself testified that medication effectively treated her migraines, further suggesting they do not amount to a severe impairment.  Id. at pp. 4-5 (citing Tr. 66).  Defendant also attacks the medical evidence Plaintiff references in her brief, claiming it does not suggest more than a mild work-related limitation.  Id. at p. 5 (citing Tr. 1248, 1288, 1559).  Defendant also highlights that the record also indicates Plaintiff was referred to a neurologist, but she never made an appointment despite her ongoing issues.  Id. (citing Tr. 1288).

Defendant points out that a review of those records does not indicate anything other than a mild limitation to her work-related abilities, much less a limitation that would result in missing more than ten percent of a workday or multiple absences in a month. Id. (citing Tr. 1248, 1288, 1559).

Defendant goes on to dispute Plaintiff's argument, setting out the ALJ's process for resolving step two by determining the existence of a severe impairment and evaluating it further. Id. at p. 6 (citing Tr. 37-46). The ALJ considered all of Plaintiff's physical and mental impairments regardless of severity both alone and in combination, and it was during this analysis that he determined there was no credible evidence to support greater limitations for Plaintiff. Id. (citing Tr. 44; Sawyer v. Colvin, 995 F.Supp.2d 496, 509 (D.S.C. 2014) (parenthetical omitted)). Defendant concludes that Plaintiff's position amounts to a disagreement over the weight given to certain pieces of evidence, meaning remand is inappropriate. Id. at pp. 6-7.

The undersigned finds Defendant's argument on this issue persuasive. The ALJ's conclusion that Plaintiff's migraine condition is not a severe limitation was determined based on a review of both the medical record and Plaintiff's own testimony, where she stated that medicine effectively mitigated her symptoms. (Document No. 8, pp. 4-5 citing Tr. 38, 66). Moreover, as recognized by Defendant, Plaintiff was not seen for tension headaches and migraines until May 23, 2022, which is more than five (5) years since her alleged onset date and well after her claim was filed and initially denied. See (Document No. 7, p. 5) and (Tr. 35). In short, the undersigned is satisfied with the ALJ's analysis on this issue and disagrees with Plaintiff's contention that the ALJ improperly relied on one treatment note from 2022. (Document No. 7, pp. 7-8). A reviewing ALJ is not required to discuss every piece of evidence. See Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019) (quotation omitted). Regardless, the ALJ identified seven severe impairments in evaluating Plaintiff's claim and explicitly excluded migraines from that grouping because

9

Plaintiff, by her own admission, successfully managed her symptoms with medications and there was no indication her symptoms were worsening. (Document No. 8, pp. 4-5 citing Tr. 38, 67). Any further analysis or evaluation by the court would amount to reweighing evidence, which is improper at this stage. See Hancock, 667 F.3d at 472 (2012). As such, the undersigned finds that remand is not appropriate.

### B. Plaintiff's Testimony

Next, Plaintiff asserts that the ALJ erred by failing to consider her testimony regarding her impairments' impact on her abilities in a work environment. (Document No. 7, p. 11) Plaintiff states that the ALJ determined she had several severe impairments, including obesity, knee dysfunction, and asthma, satisfying the first step of the disability determination process. Id. (citing Tr. 37). Next, Plaintiff asserts the ALJ "must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." Id. (citing Arakas v. Comm'r, 983 F.3d 83, 95 (4th Cir. 2020)). Plaintiff relies on Arakas to demonstrate the ALJ's duty to consider the entire case record in addition to a claimant's statements regarding the intensity and limiting nature of their symptoms, which cannot be ignored even if not substantiated by the objective medical evidence. Id. (quoting SSR 16-3p). In Arakas, the court found the ALJ erred in not considering the "longitudinal record" of the claimant's symptoms as a whole when the ALJ discredited claimant's subjective complaints about her fibromyalgia symptoms. Arakas, 983 F.3d at *101-102. Plaintiff alleges the same occurred in the instant matter, and that the ALJ's conclusions were not supported by substantial evidence, a standard repeatedly recognized in relevant caselaw. Id. (citing Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015); see also Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 364 (4th Cir. 2023)).

Plaintiff contends that the ALJ's finding relied on the objective record with disregard for Plaintiff's testimony regarding the severity and persistence of her symptoms. Id. at pp. 11-12 (citing Tr. 42). Plaintiff believes the record's medical evidence reviewed by the ALJ fails to consider Plaintiff's subjective impression of her pain and symptoms. Id. at p. 12 (citing Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 364 (4th Cir. 2023) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)) ("while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity."). Plaintiff goes on to attack the ALJ's apparent disregard for how Plaintiff's obesity could impact her other symptoms, such as her knee disfunction, asthma, and hypertension. Id. at pp. 13-14 (citing Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 866 (4th Cir. 2014) (quoting Walker, 889 F.2d at 50) ("an ALJ must 'adequately explain his or her evaluation of the combined effects of [a claimant's] impairments.'").

In particular, Plaintiff points toward the ALJ's failure to consider how her obesity would impact her back pain, which was managed by medication during the period under consideration. Id. at p. 14 (citing Tr. 339, 470, 523, 1018, 1249, 1294). Plaintiff was referred to a physical therapist and advised to lose weight after her back pain resulted in complaints of excruciating pain and a reduced range of motion. Id. (citing Tr. 767, 882, 883). Plaintiff argues that the ALJ, in finding that her back pain was not a severe impairment, failed to consider how her obesity exacerbated her back pain symptoms. Id. at pp. 14-15 (citing Tr. 37; see also SSR 19-2p ("The combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately")). Plaintiff believes that she is not capable of engaging in sedentary work and that she would be correctly found disabled if the ALJ had properly evaluated the combined impact of her impairments. Id. at p. 15.

11

In response, Defendant argues the ALJ correctly represented Plaintiff's subjective allegations and properly identified substantial evidence that her testimony was not consistent with the record's medical evidence. (Document No. 8, p. 7) (citing Tr. 42-44). Defendant also categorizes Plaintiff's argument as a call to re-weigh the evidence and draw factual conclusions, which is inappropriate on appeal. Id. (citing Craig v. Chater, 76 F.3d at 585, 589 (4th Cir. 1996) (quotation omitted)). Defendant notes that the court should provide deference to the ALJ's role as factfinder and his assessment of claimant's testimony. Id. at pp. 7-8 (citing 20 C.F.R. 416.929; Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.")).

Defendant goes on to state that the ALJ's analysis of Plaintiff's testimony was in fact supported by evidence identified throughout the ALJ's decision. Id. at p. 8 (citing Tr. 37-44). Defendant contends that the ALJ correctly began his analysis by discussing Plaintiff's statements about her physical symptoms and their impact on her ability to function. Id. at p. 8 (citing Tr. 41-42). Defendant also argues that the ALJ determined that Plaintiff's providers attributed most of her symptoms to her obesity, but Plaintiff stabilized those symptoms with medication and failed to follow through on her medical provider's recommendation to lose weight or undergo a bariatric surgery evaluation. Id. at pp. 8-9 (citing Tr. 37-38, 42-43, 344, 409-416, 531, 771, 1032). Defendant asserts that the ALJ found, in spite of Plaintiff's various conditions, she had unremarkable objective medical findings, such as normal gait, pulse, heart and lung function, and motor strength among others. Id. at p. 9 (citing Tr. 37-39, 42-43). Defendant then states that the ALJ's findin0g was supported by statements from state agency expert Harry Gallis, M.D., who found that Plaintiff could perform light work with postural limitations despite her impairments.

12

Id. at p. 10 (citing Tr. 44). Defendant maintains there was no piece of medical evidence in the record suggesting greater limitations than Dr. Gallis' analysis of Plaintiff's impairments. Id. Defendant asserts the ALJ could rely on the absence of greater evidence in making his decision. Id. (citing Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (holding that the Commissioner is entitled to rely not only on what the record says, but also on what it does not say)). Even still, the ALJ acknowledged that Plaintiff's "symptoms support more significant limitations than those suggested by Dr. Gallis." Id. (citing Tr. 44).

Defendant also addresses Plaintiff's various arguments regarding the alleged insufficiency of the ALJ's evaluation of Plaintiff's claim. Id. at pp. 11-13. Defendant asserts that the ALJ provided a sufficient logical bridge in reviewing both Plaintiff's subjective testimony and evidence and the objective medical record, accounting for them in his RFC assessment. Id. at p. 11 (citing Tr. 44). Defendant further contends that the ALJ is entitled to "draw his own conclusions from the record evidence." Id. at p. 12 (citing Tr. 37-44, and Boulden v. O'Malley, 2025 WL 48337, at *5 (4th Cir. Jan. 8, 2025)). Defendant also criticizes Plaintiff's allegations by arguing Plaintiff failed to point to any record evidence and merely speculated that she would be unable to perform sedentary work. Id. at p. 13 (citing Russell v. Chater, 60 F.3d 824, 1995 WL 417576, at *3 (4th Cir. 1995) (rejecting argument where plaintiff "speculate[d] that his obesity may have somehow aggravated his neck condition . . . but he does not explain the basis of this theory")). Defendant maintains the ALJ presented a traceable rationale in evaluating Plaintiff's claim that does not warrant remand. Id. at p. 14.

The undersigned finds the ALJ did not err in his combined analysis of Plaintiff's testimony and medical record to determine if she was capable of sedentary work. An ALJ follows a two-step process in evaluating a claimant for disability: the ALJ must determine whether there is a

medically determinable impairment that could reasonably be expected to produce claimant's symptoms. See 20 C.F.R. § 416.929. The ALJ's two-step analysis requires consideration of whether the claimant has an impairment that might cause the alleged symptoms; and a determination of whether the claimant's statements on the impact of the alleged impairments are consistent with the medical record. Id. (citing Social Security Ruling 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016)). Here, the ALJ sufficiently discussed both Plaintiff's subjective and objective evidence for all of Plaintiff's impairments. (Tr. 37-44). Defendant has shown the ALJ's "logical bridge" connecting the objective medical evidence to his determination on Plaintiff's subjective complaints. See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). Plaintiff's argument calls for the Court to reassess the facts to assign greater weight to Plaintiff's testimony, which would be improper. The undersigned finds that the ALJ's decision should be affirmed.

## CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Commissioner's determination be **AFFIRMED**.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact,

conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>United States v. Benton</u>, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. <u>Id.</u> "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

 **IT IS SO RECOMMENDED**.

Signed: February 19, 2026

David C. Keesler
United States Magistrate Judge